Case number 16-7055. Sina Chenari, Appellant v. George Washington University. Mr. Bach for the Appellant. Mr. McConnell for the Affile. Good morning. Please support Jason Bach on behalf of the Appellant, Sina Chenari. Good morning. If George Washington University had its way, they would have this court believe that Mr. Chenari is simply just a cheat and not a student with disabilities. We have documented a number of occasions that Mr. Chenari had had interactions with the faculty at George Washington University Medical School for more than two years before he was actually dismissed from the medical school where Mr. Chenari's mental issues and psychological issues were discussed with the faculty members. And it's important to note in this case that Mr. Chenari was not dealing with faculty members from an English department or some other type of a liberal arts department. He was dealing with trained medical doctors in the medical school discussing his conditions with these medical doctors. I don't think it increases their obligation to suggest an accommodation, but what it does do is it certainly creates a question of fact as to whether or not they were aware that he suffered from a disability when they are trained medical doctors having those discussions with them in person. What case stands for the proposition that just being aware that he has a disability gets you where you need to go to get a trial? Well, in this Pickard case, we have a situation where the cases that are cited primarily by the appellees aren't on point. Do you have any cases that are on point? We have never seen a case where we have a student who is going to a medical school, a faculty member's administration saying that I have these issues, I have these problems. We believe that more likely this information was intentionally withheld from Mr. Chenari. I understand this information is available on the vast George Washington website. They claim that Mr. Chenari had an obligation to not just inform them of his disability, but had an obligation to go to the student disability services office to request accommodations. But doesn't the case law require that the student not only notify the institution about the disability but request an accommodation? That's what the case law says, and he concedes that he never requested an accommodation. Right, Mr. Chenari was not aware that he was entitled to any accommodations. He does say in his deposition under questioning that he did not ask for an accommodation, correct? He did not ask for accommodations until after his dismissal from the medical school. And you mentioned, in answer to Judge Wilkins, you mentioned this website for disability support services. Have you looked at that? I have, Your Honor. It has been some time, but I have. It seems to me, tell me if this is, if my perception of this website. First of all, they mention the website, the website is mentioned in the guide for, what do they call it, the survival guide? It's mentioned in there, and Dr. Goldberg testifies that she told your client about it. So, and there's no contrary evidence in the record about it. So, would I be wrong to think that what this website is, is essentially an offer of reasonable accommodation under the law to any student who needs it? I mean, that's what it is. When you click on the third option, which is for accommodation, there are seven different options, you know, on how to apply, including testing and including ADHD. So, why isn't that essentially the university's offer of reasonable accommodation to any student who needs it? Do you see my point? I do, Your Honor, and the point being is that Mr. Trenari never saw that website. Well, wait, we have to deal with the record here. And the only thing in the record is, number one, that it's in the survival guide, correct? That's correct. And number two, Dr. Goldberg testified, right, that she tells all first-year students about it. She did testify to that. Okay, and there's no contrary evidence in the record, correct? Just Mr. Trenari's words that he doesn't have a recollection of that. Yeah. He doesn't deny that she said it. He does not deny that she said it, but he does not have a recollection. He doesn't recollect it, but, you know, if you think about the way this statute works and what it's supposed to accomplish, isn't this website exactly what universities should be doing? And they should be informing the students about that website. In the record, in this case, they did. Now, maybe you think they should do a better job of informing them, right? Well, let me put it to you this way. Suppose he had known about it. Would you agree that that would be fatal to your case? If he had known about the website? Yeah, if there was evidence that he knew about it and didn't take advantage of it. Yes, I mean, he believed that they were intentionally, after the fact, when he discovered this information, in retrospect, he believed that they were withholding this information from him. But is there any evidence in the record about that at all? That they were withholding the information about the website? There is no evidence in the record that Dean Goldberg ever told Mr. Tonario one-on-one in their meetings, in their numerous meetings, she has never testified that she referred him to that website. But she did testify that she every year tells the first-year students about it. She testified that she tells, but she tells all students. And it's in the manual? That's correct, and I'm going to reserve my three minutes. May it please the Court, Nicholas McColl on behalf of George Washington University. It's been represented to the Court that the plaintiff has never encountered a case similar to this one where a student with a disability who has informed various school officials of ADHD, that that has then led to a dismissal. But that's exactly what the Halperin case was about, which we have cited in our brief. I think the case law is clear that a student under circumstances such as Mr. Tonario needs to do something more than simply say to a faculty member somewhere, oh, by the way, I have ADHD, because in and of itself ADHD doesn't constitute a disability. Well, suppose it does. The student has to give notice, correct? Yes, Your Honor. Okay, and the university's obligation is to respond, and the student's supposed to ask for a reasonable accommodation, correct? Correct, Your Honor, yes. But there are some disabilities that are just obvious, right? Correct, Your Honor. And so the university sort of has constructive notice of both the disability and the need for accommodation, correct? That is true. Okay. So it's not true that in all circumstances the student has to request a reasonable accommodation. There may be circumstances, Your Honor, true, where the existence of a disability would be obvious. Yeah. Agreed. But the cases are quite clear that ADHD is not one of them. In fact, we cite a case in our briefs where the student with ADHD actually attempted to prove through medical evidence that the ADHD both existed and was sufficiently severe as to create academic problems for the student. The court looked carefully at the medical testimony and determined that the diagnosis, particularly of ADHD, is a complicated diagnosis, difficult to make. The DSM manual that sets out the guidelines for how the diagnosis is made follows through a whole series of very complex steps. And the court looked at that evidence and determined, no, in this instance, even with some medical support, the record does not sufficiently establish that this student had ADHD of a severity that constituted a disability for academic purposes requiring accommodation of some kind. Can you tell Dr. Flory that his anxiety was impairing his ability to participate on performance-based tests and performance-based classes? He mentioned anxiety, and it would be difficult to think of any student under the pressures of medical students. No, no, anxiety that impaired his ability. He didn't just say, I'm anxious. He said, I have anxiety that is impairing my ability to perform in these performance-based classes, the clinical classes or the interaction with mock patients, and to take performance-based tests. And Dr. Flory responded not by everybody saying everyone's anxious, but by saying here is a special counselor who's focused on this. But at least a school official was on notice that he had a disability that was impairing his ability to take tests. Were they not? Anxiety is not a disability, Your Honor. It may be if it arises in the context of a diagnosis that says that the disability reaches that level, but virtually every student in an academic high-pressure environment has anxiety, and it does affect performance. There's no question about that. No, no, here. This was different. Here. You're not seriously saying that all students suffer from an anxiety disorder, are you? No, absolutely not, Your Honor. Nor are you saying, at least I assume you're not saying, that a student couldn't have a diagnosed anxiety disorder that could arise to a disability under the Act. That could certainly be true, Your Honor. Okay, so then why did you answer Judge Millett by saying that it's not a disability? It's not necessarily a disability. And here, of course, the student was directly referred for counseling for the very purpose of sorting out, A, is there some way that we can help you with that anxiety? Is this something more than the normal student anxiety? That was the purpose for the referral. Well, let me just clarify a couple things that you just said. One, I think the record shows that both Dr. Flory and a number of the teachers had noticed that he was having more problems than the usual student in this context because of his anxiety. And two, I just had a question, given that, is there evidence in the record that says this referral was, I got it that it was for counseling to help him deal with it. I thought you just said it was also to help diagnose whether he had an anxiety disorder? Well, that would certainly... Is that what this counselor does? Yeah, the physicians he was speaking with generally in the medical program aren't necessarily those who are going to make these types of diagnoses. That's why they are referred for counseling. That's where the process would begin. Does the counselor do the diagnosis, or does the counselor just help? I thought the counselor was their accommodation. It would be both. I would assume that a competent clinician is going to decide, I can help the student with this anxiety or know there's something more going on with the student that I need to refer, either to the disability office or perhaps to some other level of clinician, maybe a psychiatrist, maybe a psychologist. But certainly that's where that process begins, and he was referred to the process, encouraged to go there by several people, Dr. Goldberg, Dr. Flory, and of course his own attending physician, Dr. Doerr, had said, look, if you're really having problems with this, the logical place for you to go is to go back to the university and seek counseling there. He was then referred to counseling, and certainly his response to that was, I don't have time for that. Did you ask for any accommodation from the university to take time off from your academic schedule so that you could do that? No, I never asked for that. Is there anything in the record that would tell us how effective this website is, like how many students use it and how it works? There is nothing in the record on that issue, Your Honor. Do you know? Do you happen to know? I can say that every faculty member I've talked with has made quite clear that students at the university of disability are welcome to the community and supported in the community. Well, that wasn't my question. Students are not turned away. That wasn't my question. I was asking about the website. The website itself? I don't know. You don't know. Okay. Anything else? No. Okay. Thank you. Thank you, Your Honor. Did counsel have any time left? Okay. Go ahead. In fact, Your Honor, the record does show that Dr. Flory, at the time that she recommended that he see a counselor, had no knowledge of there even being an office that provided accommodations to students. What accommodation did he want? Well, the number one accommodation for a student with ADHD that he would have benefited from was extended test timing. And if you look at why he got in trouble and why this issue came up, with him filling in the bubbles, it has everything to do with test time. And that's one of the exact accommodations that they offer on the website. Right. That is one of the accommodations. It's the most common accommodation for ADHD. It's right there on the website, and a student can apply for it, and with medical justification will get an adjustment of their – will get just that accommodation. That's correct, Your Honor. And your only response to that is that he didn't know about it. He did not know about it, but also he's going and talking to these professionals in his department who are not referring him directly to that office. Dr. Flory, for example, had no knowledge the office even existed. So they can't refer him to an office that they don't know existed. In my short period of time, I just want to clear up a few issues on the record of factual disputes. The appellees are claiming that Dean Goldberg has stated that Mr. Trinari never told her about his ADHD, and that's not accurate. In her deposition, she testified that she had no recollection of him telling her, but she did not deny that he told her. Another factual issue involving Dr. Durer, who was Mr. Trinari's personal physician, they would like the court to believe that he never actually diagnosed him with ADHD. In fact, Dr. Durer stated that he didn't see in his notes on the date that he prescribed the ADHD that he diagnosed him. However, he did admit that he did diagnose him in February of 2012 with ADHD. And I see my time came.  Thank you both. The case is submitted.
judges: Tatel, Millett, Wilkins